UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ESTEBAN GERARDO ADAME-LOPEZ,<br><br>Defendant. | Case No. 3:23-cr-00024-LRH-CLB<br><br>ORDER |

Before the Court is Defendant Esteban Gerardo Adame-Lopez's ("Adame-Lopez") motion to dismiss. ECF No. 17. The Government responded (ECF No. 21) and Adame-Lopez replied (ECF No. 22). Adame-Lopez also requests a hearing on the motion. *See* ECF No. 17 at 1; *see also* ECF No. 22 at 1. For the reasons articulated herein, the Court denies the motion and the hearing request.

**I.      BACKGROUND**

In July of 2020, Adame-Lopez pled guilty and was convicted of attempted battery with the use of a deadly weapon resulting in substantial bodily harm in the Second Judicial District Court of the State of Nevada in and for the County of Washoe (Case Number CR20-0119A). *See generally* ECF Nos. 21-4, 21-5. Almost two years later, Adame-Lopez was arrested pursuant to an active bench warrant after failing to appear in Reno Justice Court on misdemeanor charges of battery and use or possession of drug paraphernalia. ECF No. 21-2 at 2. During the arrest, Adame-Lopez informed officers that he had a firearm on his person which led to the officers recovering a loaded Taurus Millennium G2 9mm handgun from Adame-Lopez's waistband. ECF No. 21-3 at 6–8.

In July of 2023, a federal grand jury in the District of Nevada returned an indictment charging Adame-Lopez with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). ECF No. 1 at 1, 2. On December 15, 2023, Adame-Lopez filed a motion to dismiss in which he argues that the indictment violates his Second Amendment rights under the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). ECF No. 17 at 1. According to Adame-Lopez, *Bruen* changed the applicable legal analysis courts use when faced with a Second Amendment challenge by (1) eliminating the secondary "means-end-scrutiny" analysis and (2) tinkering with the preliminary "history" analysis. *Id*. at 3, 4. Adame-Lopez claims that *Bruen* tinkered with the "history" analysis by adding an affirmative burden on the Government to "prove that its firearm regulation is part of the historical tradition." *Id*. Adame-Lopez then argues that *Bruen*'s new framework controls and effectively overrules prior Ninth Circuit precedent and that the Ninth Circuit has since honed *Bruen*'s framework in *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023) and *Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023). *Id*. at 2–4. In sum, Adame-Lopez claims that the indictment fails under *Bruen*, *Teter*, and *Baird* because the Government cannot prove a tradition of distinctly similar regulations necessary to sustain the singular charge indictment. *Id*. at 8–12.

In response, the Government argues that the Court should deny the motion because *Bruen* casts no doubt on the constitutionality of 18 U.S.C. § 922(g)(1) and even if the Second Amendment's plain text did extend to such conduct, § 922(g)(1) falls within the nation's long-standing tradition of disarming citizens who engage in criminal activity or are otherwise not law-abiding. ECF No. 21 at 1, 2. The Government claims that Adame-Lopez's constitutionality challenge to § 922(g)(1) is based on a faulty reading of *Bruen* and other Second Amendment precedent. *Id*. at 3, 4. While the Government concedes that Adame-Lopez correctly interprets *Bruen* as rejecting the secondary "means-end-scrutiny" analysis, it believes that Adame-Lopez incorrectly asserts that *Bruen* erased the two-step analysis entirely. *Id*. at 6. Moreover, the Government emphasizes that *Bruen* aligns with other Second Amendment precedent in that both pronounce that Second Amendment rights belong only to law-abiding citizens, not felons. *Id*. at 6. As an extension then, the Government argues that *Teter* and *Baird* contemplated how the Ninth

Circuit may apply *Bruen* to blanket bans on butterfly knives and open carry but do nothing to disturb prior circuit and Supreme Court jurisprudence regarding felon disarmament. *Id.* at 7.

In reply, Adame-Lopez argues that people with felony convictions are people guaranteed rights under the Constitution such as the right to keep and bear arms under the Second Amendment. ECF No. 22 at 1, 2. Therefore, Adame-Lopez argues that whether a restriction on that right passes constitutional muster is dependent on a *Bruen* analysis and, further, that the Government's response failed to identify any laws that imposed a permanent, categorical, and criminal ban on people with felony convictions possessing firearms, rendering the indictment unconstitutional. *Id.* Adame-Lopez's motion is addressed below.

## II. LEGAL STANDARD

Dismissal of criminal charges is "appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). A violation of due process arises when there exists governmental conduct that is "'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *Id.* (citing *United States v. Restrepo*, 20 F.2d 705, 712 (9th Cir. 1991)). With universal considerations of justice in mind, a federal court may use its supervisory powers "to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally as a remedy to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983).

## III. DISCUSSION

The Second Amendment guarantees that "the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court recognized and agreed with its prior holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), that "the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–10. The Supreme Court in *Bruen* further extended that right under the Second and Fourteenth Amendments to include protection of "an individual's right to carry a handgun for self-

defense outside the home," and expressly stated that its holding was "consistent with *Heller* and *McDonald*[.]" *Id*. at 10. In doing so, however, the Supreme Court declined to use the two-step "history" and "means-end-scrutiny" framework traditionally used by Courts of Appeals when "analyzing Second Amendment challenges[.]" [1] *Id*. at 17. Specifically, the Supreme Court replaced step-two's "means-end scrutiny" analysis with an extension of step-one's "history" analysis consistent with *Heller*'s demand for a test rooted in the amendment's text, as informed by history. *Id*. at 19. The Supreme Court explicitly defined the extension as requiring the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*.

In clarifying its new standard for examining Second Amendment challenges, *Bruen* stated, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendments unqualified command." *Id*. at 24 (quotation omitted). In sum, *Bruen* articulated that "the test [] we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id*. at 26. In applying that test, *Bruen* also stated that it was making "the constitutional standard endorsed in *Heller* more explicit[.]" *Id*. at 31. It follows then that an understanding of *Heller* is instructive here, particularly where *Heller* espouses its position on the relationship between Second Amendment rights and felons, the focus of Adame-Lopez's motion.

In *Heller*, the Supreme Court examined the history of firearm rights and held that Washington D.C.'s ban on handgun possession within the home violated the Second Amendment. *Heller*, 554 U.S. at 635. In doing so, *Heller* explained that "[a]lthough we do not undertake an

---

[1] Before *Bruen*, and at the first "history" step of the analysis, courts ascertained the original scope of the right based on its historical meaning. *Bruen*, 597 U.S. at 18. If the regulated conduct fell beyond the amendment's original scope, the regulated activity was categorically unprotected, and the analysis would end. *Id*. If the regulated conduct fell within the amendment's original scope, courts would move to the second "means-end-scrutiny" step at which point the court would analyze "how close the law [came] to the core of the Second Amendment right and the severity of the law's burden on that right" to determine what level of scrutiny applied. *Id*.

exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id*. at 626. *Heller* also indicated that prohibitions on the possession of firearms by felons were "presumptively lawful regulatory measures[.]" *Id*. at 627 n. 26. The Supreme Court reiterated *Heller*'s view that the United States has had a longstanding history of prohibiting felons from possessing firearms two years later in *McDonald*. 561 U.S. at 786 ("[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons'") (quoting *Heller*, 554 U.S. at 626, 627).

Bound by *Heller* and *McDonald*, the Ninth Circuit has routinely upheld felon-in-possession laws as constitutional and found that they do not violate the Second Amendment. In *United States v. Phillips*, the Ninth Circuit affirmed a district court's denial of a felon-defendant's motion to dismiss where the felon-defendant argued that § 922(g)(1) violated the Second Amendment. 827 F.3d 1171, 1174 (9th Cir. 2016). In *Phillips*, the Ninth Circuit reasoned that the felon-defendant's constitutionality argument was foreclosed by precedent, specifically the Ninth Circuit's decision in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010). *Id*. at 1173–174. In *Vonxgay*, the Ninth Circuit expressly held that "§ 922(g)(1) does not violate the Second Amendment as it applies to … a convicted felon," because "felons are categorically different from the individuals who have a fundamental right to bear arms." *Vonxgay*, 594 F.3d at 1115, 1118. *Vonxgay* relied on *Heller*'s reasoning that the class of people protected by the Second Amendment does not include felons and, as such, felon-in-possession laws are "*presumptively lawful regulatory measures*[.]" *Id*. at 1115 (emphasis original).

With this precedent background knowledge on the Second Amendment, the Court is well-positioned to consider the present matter's primary issue: whether *Bruen* is "intervening Supreme Court authority" that is "clearly irreconcilable" with Ninth Circuit authority in *Vonxgay*, and subsequently, whether the Court is "bound by [that] intervening higher authority" and must "reject" the Ninth Circuit's "prior opinion." *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Even where circuit precedent is authoritative at the time of issue, it "can be effectively overruled by subsequent Supreme Court decisions that are closely on point,

even though those decisions do not expressly overrule the prior circuit precedent." *Id*. at 899 (citation and quotation omitted). For a case to be "effectively overruled," the higher court must "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id*. at 900. "The clearly irreconcilable requirement is a high standard" and it is "not enough for there to be some tension between the intervening higher authority and prior circuit precedent." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (citation omitted). Where a court can apply "prior circuit precedent without running afoul of the intervening authority [it] must do so." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quotation omitted).

The Court finds that *Bruen* is not "clearly irreconcilable" with *Vonxgay* as to "effectively overrule" it. *Bruen* does not undercut *Vonxgay*'s reasoning in such a way that the two cannot co-exist and, in fact, each is founded and reasoned in *Heller*. As previously stated, *Bruen* requires courts to analyze whether "the regulation is consistent with this Nation's historical tradition of firearm regulation," as a natural extension of *Heller*'s first-step "history" analysis. *Bruen*, 597 U.S. at 19, 24. The Supreme Court clarified that its holding in *Bruen* was "in keeping with *Heller*," *id*. at 17; making "the constitutional standard endorsed in *Heller* more explicit," *id*. at 31; and rooted in *Heller*, *id*. at 8, 9, 10, 17, 26, 27, 28, 29, 31. In fact, the concurring and dissenting Justices in *Bruen*, and those who joined their opinions, all acknowledged that *Bruen*'s holding was not at odds with *Heller*'s endorsement of the presumptive lawfulness of longstanding prohibitions on felons possessing firearms. *See id*. at 80, 81 (stating that "the Second Amendment allows for a variety of gun regulations" including "presumptively lawful regulatory measures" such as "longstanding prohibitions on the possession of firearms by felons" (Kavanaugh, J., concurring)); *see also id*. at 72 (stating that *Bruen* "decides nothing about who may lawfully possess a firearm" and that *Bruen* did not disturb "anything that we said in *Heller* or *McDonald*" (Alito, J., concurring)); *Id*. at 129 (stating that *Bruen* casts "no doubt" on *Heller*'s treatment of felon-in-possession laws (Breyer, J., dissenting)).

Similarly, in *Vonxgay*, the Ninth Circuit examined *Heller* and noted that the Supreme Court indicated some individuals are "disqualified from the exercise" of Second Amendment rights.

*Vonxgay*, 594 F.3d at 1114–115. In addition to examining *Heller*, the Ninth Circuit examined other circuit cases "of historical gun restrictions" and concluded that they provided authority for "post-*Heller* viability" of previous determinations that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment. *Id*. at 1116. After its examination of historical gun restrictions, the Ninth Circuit also observed that "most scholars of the Second Amendment agree that the right to bear arms was inextricably ... tied to the concept of a virtuous citizen[ry] that would protect society through defensive use of arms against criminals, oppressive officials, and foreign enemies alike, and that "the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals)[.]" *Id*. at 1114–118 (citations and quotations omitted).

The Court finds that both *Vonxgay* and *Bruen* share *Heller*'s reasoning that some individuals may be, and felons are, disqualified from Second Amendment rights. Because *Bruen* is not "clearly irreconcilable" with *Vonxgay* and its *Heller* reasoning, it is not "intervening Supreme Court authority" that "effectively overrules" prior circuit precedent. Put alternatively, no language in *Bruen* suggests that the Supreme Court has retracted its position that rights under the Second Amendment do not extend to felons. Therefore, *Bruen* does not undercut *Vonxgay*'s theory or reasoning nor its shared position on the issue of felons and Second Amendment rights. Bound by *Vonxgay* then, the Court is obligated to apply circuit precedent and uphold 18 U.S.C. § 922(g)(1) as constitutional.[2] *See Fed'l Trade Comm'n v. Consumer Def., LLC*., 926 F.3d 1208, 1213 (9th Cir. 2019). This alone is a satisfactory basis to deny the motion.

Even were the Court empowered to disregard precedent and subsequently perform the new historical analysis under *Bruen*, it would nonetheless deny the motion and hearing request. First, much of the history analysis and caselaw review already presented in this Order supports denial. In addition, the Court would rely on and be persuaded by the analysis of history and tradition performed by the Court of Appeals for the D.C. Circuit in *Medina v. Whitaker*, 913 F.3d 152, 158–

---

[2] Various district courts in the Ninth Circuit faced with the same post-*Bruen*-Second Amendment-felon-in-possession-statute challenge Adame-Lopez presents here have concluded that *Bruen* did not effectively overrule *Vonxgay* for nearly identical reasons. *See United States v. Delpriore*, 634 F. Supp. 3d 654 (D. Alaska Oct. 4, 2022); *see also United States v. Siddoway*, Case No. 1-21-CR-00205-BLW, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v. Hill*, 629 F. Supp. 3d 1027 (S.D. Cal. Sep. 20, 2022).

7

60 (D.C. Cir. 2019), as well as the district court's analysis and conclusion in *United States v. Gamble*, Case No. 2-22-CR-00267-JAD-EJY, 2023 WL 6460665, at *2–5 (D. Nev. Oct. 4, 2023) that laws criminalizing firearm possession by individuals with felony convictions such as § 922(g)(1) pass both prongs of *Bruen*'s new test.

For these reasons, the Court denies Adame-Lopez's motion and his request for a hearing.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendant Adame-Lopez's motion to dismiss (ECF No. 17) is **DENIED** as is his request for a hearing on the matter.

IT IS SO ORDERED.

DATED this 30th day of January, 2024.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE